1  **BEN TRAVIS LAW, APC**
   Ben Travis (305641)
2  ben@bentravislaw.com
   4660 La Jolla Village Drive, Suite 100
3  San Diego, CA 92122
   Phone: (619) 353-7966
4
5  **Attorneys for Plaintiff Sharon Manier and the Proposed Class**

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| SHARON MANIER, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LA FERMIERE INC., a Delaware Corporation,<br><br>Defendant. | Case No: 5:22-CV-01894<br><br>**COMPLAINT FOR:**<br><br>1. Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)<br>2. Violation of the Unfair Competition Law. (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br>3. Violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)<br>4. Breach of Warranty<br>5. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL**<br><br><u>**CLASS ACTION**</u> |
1
CLASS ACTION COMPLAINT

Plaintiff SHARON MANIER ("Plaintiff") brings this class action, on behalf of herself and all others similarly situated against La Fermiere Inc. ("La Fermiere" or "Defendant"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I.   NATURE OF THE CASE

1. Defendant profits off the booming market for foreign made goods by misrepresenting on the labels of its yogurt products that they are made in France. In reality, the yogurts are made in New York.

2. The yogurts are sold in several flavors, including, vanilla bean, pressed lemon, orange blossom honey, rose, lavender, mango passion fruit, raspberry blueberry, peach apricot, strawberry pomegranate, salted caramel, pineapple coconut and plain. In addition, there are seasonal flavors including pumpkin spice and chestnut. Collectively, all flavors of yogurt are referred to as "Products".

3. The front label on the Products are all identical, except for the name of the flavor, the picture associated with the flavor, the size of the jar, and a "Seasonal Flavor" stamp for the seasonal flavors.

4. Defendant's marketing, labeling and sale of the Products misleads a reasonable consumer to believe that the yogurts are made in France, by using the words "Naturally French" on the front label.

5. Consumers interpret that statement to mean that the products are made in France, when in actuality they are made in the United States, in New York.

6. Consumers care about where and how products are made.

7. Defendant is able to charge a premium price based on these misrepresentations and consumers pay this premium price believing that the yogurt they are purchasing was actually made in France.

8. The misrepresentations on the Products are uniform and communicated to Plaintiff and every Class member at the point of purchase of the product.

9. Plaintiff was misled by the affirmative misrepresentations on Defendant's product packaging. Had she been aware of the misrepresentations described herein, she would not have purchased Defendant's products.

10. Plaintiff thus bring this action pursuant to: (i) California Civil Code §§ 1750, et seq. (the Consumers Legal Remedies Act or "CLRA"); (ii) California's Business & Professions Code §§ 17200, et seq. (the Unfair Competition Law or "UCL"); (iii) Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the False Advertising Law). Plaintiff also brings claims for breach of warranty and unjust enrichment. Plaintiff seeks damages, restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II. JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant, because Defendant has conducted and continues to conduct business in the State of California, and because Defendant has committed the acts and omissions complained of herein in the State of California.

12. This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), as Plaintiff (California) and Defendant (Delaware) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

13. Venue is proper in this District, because a substantial portion of the acts giving rise to this action occurred in this District. Specifically, Plaintiff resides and purchased the offending yogurt products within this District.

## III. PARTIES

14. **Plaintiff Sharon Manier** is, and at all times mentioned herein was, an individual citizen of the State of California and resident of Riverside, California.

15. Plaintiff has purchased the Products several times during the relevant statute of limitations period for personal and household consumption. Plaintiff has purchased the Strawberry Pomegranate and Mango Passion Fruit flavors.

16. Plaintiff's most recent purchase was approximately three months ago at Ralphs located at 6155 Magnolia Avenue, Riverside, CA 92506. Plaintiff purchased the Mango Passion Fruit flavor. Plaintiff does not recall the exact price she paid but believes it was significantly more expensive than other yogurt products.

17. Plaintiff purchased the Products over other less expensive yogurt products in reliance on Defendant's representations that the Product was made in France, by use of the words "Naturally French".

18. Plaintiff paid a premium price for the Products above the price of other yogurts.

19. Plaintiff relied upon Defendant's misrepresentations in making her decision to purchase the Products. Plaintiff suffered injury in that she would not have bought Defendant's Products had she known that the Products were not made in France. Plaintiff would like to buy Defendant's Products in the future if and when they are produced in France or if the misrepresentations are corrected, so that they are not being sold at a premium based on the misrepresentation that they are made in France. She does not currently intend to do so because she cannot rely on the accuracy of the representations in deciding whether or not she should purchase Defendant's Products but would be able to do so once the Court issues an injunction.

20. **Defendant La Fermiere Inc.** is a Delaware corporation with its principal place of business in New Jersey.

21. Defendant is in the business of manufacturing, distributing and selling yogurts throughout the country, including in California.

22. On information and belief, the labeling for the Products, that Plaintiff and Class members relied upon in making their decisions to purchase the Products were conceived, designed, prepared and/or approved by Defendant and were disseminated by Defendant and its agents through labeling, marketing and advertising containing the misrepresentations, from its headquarters.

23. On information and belief, in committing the wrongful acts alleged herein, Defendant in connection with its subsidiaries, affiliates and/or other related entities and their employees planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated misrepresentations or caused them to be disseminated.

## IV. FACTUAL ALLEGATIONS

24. Upon information and belief, Defendant runs the United States operations for a French-based company that manufactures, labels, distributes and sells yogurt in France and throughout Europe.

25. Defendant manufactures labels, distributes and sells yogurt products throughout the United States.

26. The yogurts are sold in several flavors, including, vanilla bean, pressed lemon, orange blossom honey, rose, lavender, mango passion fruit, raspberry blueberry, peach apricot, strawberry pomegranate, salted caramel, pineapple coconut and plain. In addition, there are seasonal flavors including pumpkin spice and chestnut.

27. The front label on the Products are all identical, except for the name of the flavor, the picture associated with the flavor, the size of the jar, and a "Seasonal Flavor" stamp for the seasonal flavors.

28. Defendant's Products are in glass and terra cotta jars, which unlike the ones sold in France, contain the words "Naturally French" on their front labels.

29. Examples of the front labels of several flavors are below:

//
//
//
//







### A. CONSUMER DEMAND FOR AUTHENTICITY

30. Today's consumers are faced with increasing commercialization of products and seek brands that are genuine.

31. For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

32. Manufacturers and marketers use origin claims to distinguish their products from other products, knowing consumers rely on the accuracy of those claims in making their purchasing decisions. In fact, consumers are willing to pay premium prices for Products that are authentically connected to a significant geographical area.

33. Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as France, in the case of Defendant's Products.

34. Consumers have an expectation that a product made in such location and imported to the United States will be higher quality than those made in the United States.

35. In the present instance, consumers expect Defendant's products to be made in France.

## B. MISREPRESENTATIONS

36. Defendant's marketing and advertising of the Products gives consumers the impression that they are made in France, including its front label representations that the Products are "Naturally French".

37. However, contrary to the Products' representations and omissions, they are not made in France, but rather they are made in the United States, and specifically in New York.

38. Defendant's labeling of the products with these representations demonstrates its intent to persuade customers that the Products are made in France and are therefore higher quality and to justify the premium prices.

39. On March 31, 2022, Taste France, an entity steered by the French Ministry of Agriculture and Food reported on La Fermiere opening a new factory in the United States to meet rising demand. In the article, which includes numerous quotes from Defendant's CEO, it states "[h]is products, which are labelled "*Naturally French,*" benefit from the "Made in France" reputation, which is very popular with American consumers.[1]"

40. Therefore, is it abundantly clear that Defendants' misrepresentations are false and misleading and are intended to be.

---

[1] https://tastefranceforbusiness.com/la-fermiere-desserts-are-poised-to-take-over-the-u-s-a/ (last accessed, October 21, 2022)

## C. RELIANCE AND ECONOMIC INJURY

41. Plaintiff noticed Defendant's Products on the shelf and observed from the front labels that they were made in France

42. When deciding to purchase the Products, Plaintiff sought to purchase yogurts that were made in France.

43. Plaintiff expected Defendant's Products would have been made in France.

44. Plaintiff selected Defendant's Products instead of other varieties of yogurt that were less expensive because she believed that, unlike the other brands of yogurt, Defendant's products were made in France.

45. Plaintiff understood the representations on the front of the label – "Naturally French" - and the notable absence of qualifying words such as "French style" or "French type" to indicate the Product was made in France.

46. Plaintiff did not expect the Product to be made in New York, because of the French representations.

47. Plaintiff saw and relied on the advertising identified herein, which misleadingly emphasizes France, even though the Products are not made in France.

48. Consumers do not view the back label of the Products when purchasing everyday food items such as yogurt. The Products' front labels indicate they are yogurt made in France. Therefore, Plaintiff did not view the Products' back label prior to purchasing the Products.

49. Plaintiff would not have purchased the Products if she knew the representations were false and misleading.

50. Plaintiff paid more for the Products than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

51. As a result of the false and misleading labeling, the Products are sold at a premium price compared to other similar products represented in a non-misleading

way and are sold at a price that is higher than the price of the Products would have been if they were represented in a non-misleading way.

52. Plaintiff was also deprived of the benefit of the bargain because the Products she purchased were different than what Defendants warranted.

## V. CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals, and as a member of the class and subclass ("Collectively referred to as the "Class") defined as follows:

> **The Nationwide Class is defined as follows:**
>
> All residents of the United States who, within the applicable statutes of limitation periods, purchased the Products for purposes other than resale.
>
> **The California Subclass is defined as follows:**
>
> All residents of California, who, within four years prior to the filing of this Complaint, purchased the Products for purposes other than resale.

54. Excluded from the Class are: Defendant, its assigns, successors, and legal representatives; any entities in which Defendant has controlling interests; and any Judicial officer to which this case is assigned, their immediate family and staff.

55. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise. Plaintiff also reserves the right to create additional subclasses.

56. At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of stores in the United States selling Defendant's Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

57. There is a well-defined community of interest in the questions of law and fact involved in this case. The questions of law and fact that are common to the Class members and predominate over questions that may affect individual Class members include:

1. whether Defendant misrepresented the place of manufacture of its Products;
2. whether Defendant's labeling, marketing, advertising, and/or selling of its products with misrepresentations constituted an unfair and/or deceptive trade practice;
3. whether Defendant participated in and pursued the common course of conduct complained of herein;
4. whether Defendant was enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the other Class members;
5. whether Defendant's labeling, marketing, advertising, and/or selling of its products with misrepresentations violated the CLRA;
6. Whether Defendant's conduct constitutes breach of warranty;
7. Whether Plaintiff and the Class are entitled to injunctive relief; and
8. Whether Defendant was unjustly enriched by its unlawful conduct

58. Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Defendant's Products bearing the misrepresentations in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

59. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

62. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

63. The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

64. The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

//
//
//
//
//

# COUNT I

## Unfair and Deceptive Acts and Practices In Violation of the California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (By Plaintiff on Behalf of the California Subclass)

65. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

66. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

67. Plaintiff and the other Subclass members are "consumers," as the term is defined by California Civil Code § 1761(d), because she and they bought the Products at issue for personal, family, or household purposes.

68. Plaintiff and Defendant, and the other Subclass members and Defendant, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

69. The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

70. As alleged more fully above, Defendant has violated the CLRA by misrepresenting to Plaintiff and the other Subclass members that its Products are made in France.

71. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(2), (a)(4), (a)(5), (a)(7), (a)(9) and (a)(16).

72. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to:

a. Remove and/or refrain from making statements representing that the products are made in France; and/or clarify on the front labels the true origin of the products; and

b. Conduct a corrective advertising campaign.

73. Plaintiff and the other Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

74. The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and the other Subclass members.

75. Plaintiff seeks injunctive relief for violation of this act.

76. Pursuant to California Civil Code §1780, Plaintiff and the other Subclass members also seek recovery of attorneys' fees and costs of litigation.

77. Pursuant to California Civil Code §1782, Plaintiff will send a letter to Defendant via certified mail that provides notice of Defendant's violations of the CLRA and demand that within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter will also state that if Defendant refuses to do so, a complaint seeking damages in accordance with the CLRA will be filed. If Defendant fails to rectify the unlawful, unfair, false, and/or deceptive practices alleged herein, Plaintiff will amend this Complaint to seek damages for violation of this Act.

## COUNT II

**Violation of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(By Plaintiff on Behalf of the California Subclass)**

78. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

79. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

80. **Unlawful Conduct.** Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of violations of the CLRA, Cal. Civ. Code § 1770(a)(2), (a)(4), (a)(5), (a)(7), (a)(9) and (a)(16), as alleged above.

81. **Unfair Conduct.** Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

82. Plaintiff and the other Subclass members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly labeled products.

83. There is no benefit to consumers or competition from deceptively labeling products, other than to increase Defendant's own profits.

84. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Subclass members.

85. **Fraudulent Conduct.** Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

86. The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and the Subclass members.

87. Defendant's representations and omissions deceived Plaintiff and the Subclass members about the Products' origins.

88. Defendant knew or reasonably should have known that its statements and omissions concerning the Products were likely to deceive consumers.

89. Plaintiff and the other Subclass members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly labeled products.

90. Plaintiff and the other Subclass members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

91. Defendant's violations of the UCL continue to this day. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

 a. Remove and/or refrain from making statements representing that the products are made in France and/or clarify on the front labels the true origin of the products;

 b. Conduct a corrective advertising campaign;

 c. Provide restitution to Plaintiff and the other Subclass members;

 d. Disgorge all revenues obtained as a result of violations of the UCL; and

 e. Pay Plaintiff's and the Subclass' attorneys' fees and costs.

//
//
//
//
//
//

## COUNT III

## Violation of California's False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (By Plaintiff on Behalf of the California Subclass)

92. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

93. The False Advertising Law prohibits making any false or misleading advertising claim.

94. Defendant makes false and misleading advertising claims by deceiving consumers as to the origin of the Products, namely, that they are made in France.

95. In reliance on these false and misleading advertising claims, Plaintiff and the Subclass members purchased and consumed the Products without the knowledge that they were not made in France.

96. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

97. As a result, Plaintiff and the Subclass members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## COUNT IV

## Breach of Warranty

### (By Plaintiff on Behalf of the Nationwide Class)

98. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

99. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, as described herein. This labeling and advertising constitute express warranties and

became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the labeling and advertising.

100. By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant--- that the Products, among other things, conform to the labeling and advertising.

101. Contrary to Defendant's warranties, the Products do not conform to the labeling and advertising and, therefore, Defendant breached its warranties about the Products and their qualities.

102. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

103. Accordingly, Plaintiff seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

//
//
//

## COUNT V

## Unjust Enrichment

**(By Plaintiff on Behalf of the Nationwide Class)**

104. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

105. As alleged above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase the Products at a premium.

106. It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. Defendant was only able to charge a premium for the Products by intentionally misrepresenting the Products.

107. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and the Class members, who seek restitution and disgorgement of inequitably obtained profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

A. An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B. A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C. A declaration that Defendant has committed the violations alleged herein;

D. An award of restitution for Class members;

E. An award of disgorgement for Class members;

F. An order enjoining Defendant's unlawful and deceptive acts and practices, and requiring it to correct the misrepresentation that the products are made in France and requiring a corrective advertising campaign;

G. Injunctive relief for Class members;

H. An order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees;

I. An order awarding prejudgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

J. Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

Date: October 27, 2022        BEN TRAVIS LAW, APC

By: /s/ *Ben Travis*
Ben Travis (305641)
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

Attorneys for Plaintiff and the Proposed Class